UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DELTA SIGMA THETA SORORITY, INC.,

    Plaintiff,

    v.

LAMITH DESIGNS, INC.,

    Defendant.

Civil Action No. 10-163 (BAH)
Judge Beryl A. Howell

# MEMORANDUM OPINION

In this case, plaintiff Delta Sigma Theta Sorority (hereinafter "Delta") alleges that LaMith Designs, Inc. is infringing its trademarks and service marks[1] by offering for sale without authorization merchandise bearing Delta's well-known insignias. Currently before the Court is plaintiff's motion for default judgment, the defendant's motion to vacate the Clerk's entry of default, as well as the defendant's motion to dismiss for lack of personal jurisdiction. For the reasons set forth below, the Court grants the defendant's motion to vacate entry of default and therefore denies the plaintiff's motion for default judgment. The defendant's motion to dismiss is denied, without prejudice, in order to provide the plaintiff with a period of sixty days for jurisdictional discovery. The defendant may re-submit its motion to dismiss following the sixty-day period of jurisdictional discovery.

## I.    BACKGROUND

Plaintiff Delta Sigma Theta Sorority, Inc. (hereinafter "Delta") is a well-recognized

---

[1] A service mark identifies and distinguishes the services of one person from the services of another. 15 U.S.C. § 1127.

sorority with over 900 chapters across the world. Comp. ¶¶ 10, 12. Founded in 1913 on the campus of Howard University in Washington, D.C., Delta is known not only by its official name, but also as "Delta," "Delta Sigma Theta," "Delta Sorority," and by its representative Greek letter symbols ΔΣΘ. *Id.* ¶¶ 10-11. According to the plaintiff, "[a]ny iteration of Delta's name or its Greek letter symbols is famous and recognized as a Mark signifying association with Delta." *Id.* ¶ 11.

Among the trademarks and service marks (hereinafter "Marks") associated with its organization and brand, the plaintiff has registered with the U.S. Patent and Trademarks Office: Delta Sigma Theta (Reg. No. 3,407,876), Delta's Minerva Crest (Reg. No. 3,465,351 and 2,199,610), Delta Sigma Theta Sorority, Incorporated (Reg. No. 2,197,647), the Greek letter symbols ΔΣΘ (Reg. No. 3,416,699 and 2,201,178), and the Delta Torch (Reg. No. 3,557,212). *Id.* ¶ 15. Delta also states that it owns common law marks, including "Delta" and "Delta Sorority." *Id.* ¶ 16.

Given its "strong and famous" brand, the plaintiff states that it "vigorously protects its Marks" and employs an individual to monitor and protect its intellectual property. *Id.* ¶¶ 17-18. Delta receives "hundreds of requests" each year from vendors seeking a license to sell merchandise imprinted with Delta's name and Marks, but only grants a license to those meeting the plaintiff's licensing requirements. *Id.* ¶ 19.

In order to obtain a license to use Delta's Marks, a vendor must complete an application. *Id.* ¶ 20. If approved, the vendor must then execute a Licensee Agreement and agree to Delta's Guidelines for Operating, which includes a "Code of Conduct." *Id.* As part of this process, vendors agree to acquire a license from Delta before "anyone may manufacture, design, make, copy, sell, display, or distribute" items containing Delta's Marks. *Id.* Vendors further agree to

restrict sales of merchandise bearing Delta Marks "solely to Delta members and solely at Delta-approved events." *Id.*

The plaintiff alleges that defendant LaMith Design, Inc. is selling clothing and merchandise bearing Delta's Marks without license or authorization through its catalog and its website located at www.lamithdesignonline.com. *Id.* ¶¶ 21-23. According to the plaintiff, the defendant has never contacted the plaintiff to seek a license and is "unlawfully trading on Delta's name, reputation, goodwill, and the strength of member and public association of Delta Marks with Delta." *Id.* ¶ 22. Among the items the defendant offers for sale are jackets, shoes, scarves, and bags bearing Delta's ΔΣΘ insignia and other Marks. *Id.* ¶ 23. The defendant does not restrict sale of these items to Delta members. *Id.*

Upon learning of the defendant's alleged infringing activity, the plaintiff unsuccessfully sought to halt the defendant's sale of Delta merchandise. *Id.* ¶¶ 25-27. The plaintiff states that "[d]espite having been put on notice that it was infringing on Delta's Marks and directed to cease advertising for sale and selling the infringing merchandise, Defendant continues to advertise and offer for sale merchandise that infringes on Delta's intellectual property rights." *Id.* ¶ 27.

On January 28, 2010, the plaintiff filed a Complaint seeking injunctive relief to halt the defendant's ongoing violations of its trademark and service mark rights, disgorgement of profits the defendant realized from sale of the infringing goods, and damages for misuse of the plaintiff's Marks. *Id.* ¶¶ 1-2. Specifically, the plaintiff asserts six causes of action, alleging: infringement of Delta's trademarks under section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), Federal common law, and District of Columbia common law; dilution of its trademarks under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and unfair competition under Federal and District of Columbia common law. *Id.* ¶¶ 28-65.

Shortly after filing the Complaint, the plaintiff moved on January 28, 2010, for a preliminary injunction to enjoin the defendant from selling the alleged infringing merchandise and "engaging in activities designed to damage [plaintiff's] reputation and goodwill." Pl.'s Mot. Prelim. Inj., ECF No. 2, at 1. The Court scheduled a hearing on the motion for February 25, 2010, but a day before the scheduled hearing, the plaintiff requested a continuance to allow the parties to explore settlement. Pl.'s Mot. & Mem. P. & A. for Continuance, ECF No. 6, at 1. Before the defendant had filed a responsive pleading or notice of appearance, the plaintiff stated that the owner of defendant LaMith Designs, Ajay Chopra, contacted the plaintiff and "expressed an interest in settling this matter and asked whether it could be resolved without the need for him to contact the Court or retain counsel." *Id.* at 2. The plaintiff also informed the Court that the defendant "represented that he has discontinued all uses of Delta's Marks." The plaintiff further stated that she informed the defendant, who initially was not proceeding with counsel, that the plaintiff would "ask the Court to delay any scheduled proceedings to allow the parties to explore settlement."[2] *Id.*

The Court twice granted the plaintiff's requests to continue the preliminary injunction hearing from February 25, 2010 to May 7, 2010. Minute Orders dated Feb. 24 and April 6, 2010 (Walton, J.). After the second continuance, the Court cancelled the hearing "in light of representation made by the parties," and the plaintiff did not renew the preliminary injunction motion nor attempt to re-schedule the hearing thereafter. Minute Order dated May 5, 2010 (Walton, J.). The plaintiff explains that parties were engaging "in continuing settlement discussions," which "were ultimately unsuccessful." Pl.'s Mem. P. & A. Supp. Mot. Entry of Default, ECF No. 7, at 2.

---

[2] Plaintiff indicates that, in early May, the defendant finally retained counsel, "who first contacted counsel for Delta on May 6, 2010." Pl.'s Mem. P. & A. Supp. Mot. Entry of Default, ECF No. 7, at 2.

4

In the midst of the settlement discussions, the defendant was served with the Complaint on February 17, 2010. *See* Return of Service Affidavit, ECF No. 5. The defendant's Answer was therefore due on March 10, 2010. FED. R. CIV. P. 12(a)(1)(A)(i) ("A defendant must serve an Answer . . . within 21 days after being served . . ."). Nevertheless, the plaintiff states, "[b]y agreement between the parties, Defendant's Answer was due on June 1, 2010." Pl.'s Mem. P. & A. Supp. Mot. Entry of Default, ECF No. 7, at 2; Pl.'s Mot. Entry of Default, ECF No. 7, Ex. 1, Devarieste Curry Aff. (hereinafter "Curry Aff."), ¶ 6 (plaintiff's counsel represents that "[o]n behalf of our clients, [defendant's counsel] and I reached an agreement whereby Defendant's Answer would be due on June 1, 2010 to give the parties additional time to try to reach an agreement."). No motion seeking to extend the time to answer was ever filed nor did the Court grant permission to extend the time for the defendant's Answer. *See* FED. R. CIV. P. 6(b)(1).

In accordance with the informal agreement between the parties, on June 1, 2010, the defendant submitted to the Clerk of the Court a Motion to Dismiss for Lack of Personal Jurisdiction under FED. R. CIV. P. 12(b)(2). Def.'s Mem. Supp. Mot. Vacate Entry of Default, ECF No. 11, at 1. The defendant's motion to dismiss was also served on plaintiff's counsel. *Id.* Despite the fact that at this time, the defendant was represented by counsel, the motion to dismiss was signed by "Ajay Chopra, Owner, *pro se*." *Id.* According to the plaintiff, the defendant's counsel explained in an email message on June 1, 2010, that "Defendant elected to file the motion to dismiss *pro se*, rather than retain local counsel." Curry Aff., ECF 7, ¶ 7. On June 23, 2010, the Court denied the defendant leave to file its motion to dismiss because the defendant, a corporation, cannot appear *pro se*. *See In re Greater Se. Cmty. Hosp. Found., Inc. v. Potter*, 586 F.3d 1, 4-5 (D.C. Cir. 2009 ) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel," quoting *Rowland v.*

*Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993)).

On June 18, 2010, five days prior to the Court denying the defendant leave to file its motion to dismiss, the plaintiff filed a Motion for Entry of Default, stating that because the defendant "failed to file an answer or otherwise respond through licensed counsel by the due date . . . [the] Defendant should be treated as having not appeared at all." Pl.'s Mem. P. & A. Supp. Mot. Entry of Default, ECF No. 7, at 3. Pursuant to Federal Rule of Civil Procedure 55(a), the Court Clerk entered default against the defendant on June 21, 2010.[3] Notice of Clerk's Entry of Default, ECF No. 8.

On July 9, 2010, the plaintiff filed the pending Motion for Default Judgment and Permanent Injunction and Award of Attorney's Fees and Costs. Pl.'s Mot. Entry of Default J., ECF No. 10. Two weeks later, on July 23, 2010, the defendant filed the pending Motion to Vacate Entry of Default,[4] and, in accordance with Local Rule 7(g), simultaneously re-submitted its motion to dismiss, which was signed by an attorney admitted to practice in this jurisdiction. Def.'s Mem. Supp. Mot. Vacate Entry of Default, ECF No. 11; Def.'s Mot. Dismiss, ECF No. 12; LCvR 7(g) ("A motion to vacate an entry of default, or a judgment by default, or both, shall be accompanied by a verified answer presenting a defense sufficient to bar the claim in whole or in part."). Plaintiff's motion for default judgment and both the defendant's motions to vacate entry of default and to dismiss the Complaint are currently before the Court.

For the reasons set forth below, the Court concludes that vacatur of the Clerk's entry of default is proper. Accordingly, the defendant's motion to vacate entry of default is granted and

---

[3] FED. R. CIV. P. 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

[4] The defendant's brief in support of its motion to vacate entry of default incorporated its opposition to the plaintiff's motion for default judgment.

the plaintiff's motion for default judgment is denied. The defendant's motion to dismiss, is denied, without prejudice, and the plaintiff's request for a period of jurisdictional discovery is granted.

## II. VACATUR OF THE CLERK'S ENTRY OF DEFAULT

On June 21, 2010, upon plaintiff's motion, the Court Clerk entered default against the defendant for the defendant's failure to plead or otherwise defend against the plaintiff's claims. Clerk's Entry of Default, ECF No. 8. The plaintiff subsequently moved for entry of default judgment in the amount of $620,656.11, which represented statutory damages for the defendant's alleged unlawful use of its Marks, attorney's fees, and court costs. Pl.'s Mem. P. & A. Supp. Mot. Entry of Default J., ECF No. 10, at 2. Prior to the Court's ruling on plaintiff's motion for entry of default judgment, the defendant filed a motion to vacate the Clerk's entry of default, ECF No. 11, and simultaneously responded to the Complaint by filing a motion to dismiss for lack of personal jurisdiction. ECF No. 12.

Courts "universally favor trial on the merits." *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 (D.C. Cir. 1980) (quoting *Bridoux v. Eastern Air Lines, Inc.*, 214 F.2d 207, 210 (D.C. Cir. 1954)); *accord Peterson v. Archstone Communities LLC*, 637 F.3d 416, 418 (D.C. Cir. 2011) (vacating district court's dismissal of action for lack of prosecution, noting that "disposition of claims on the merits is favored.") (internal quotations and citations omitted). Courts disfavor default judgments because entering judgment without allowing a party to present a defense is a particularly harsh penalty for filing delays. *Keegel*, 627 F.2d at 375 ("the interests of justice . . . would be ill-served by resort to a procedural device that would unfairly or unnecessarily foreclose resolution of the dispute on its merits."); *Jackson v. Beech*, 636 F.2d 831, 835-36 (D.C. Cir. 1980) ("Default judgments are not favored by modern courts, perhaps because

it seems inherently unfair to use the court's power to enter and enforce judgments as a penalty for delays in filing . . . [and] strong policies favor resolution of disputes on their merits."). Default judgment is usually reserved for "when the adversary process has been halted because of an essentially unresponsive party . . . [as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Jackson,* 636 F.2d at 836 (quoting *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Pursuant to Federal Rule of Civil Procedure 55(c), the Court may set aside an entry of default "for good cause shown." To demonstrate good cause, "the moving party [must] provide an explanation for the default or give reasons why vacation of the default entry would serve the interests of justice." *Haskins v. U.S. One Transp., LLC*, 755 F. Supp. 2d 126, 129 (D.D.C. 2010) (alteration in original) (quoting 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, & RICHARD L. MARCUS, FED. PRAC. & PROC. CIV. § 2696 (3d ed.)). The decision to vacate entry of default lies within the discretion of the trial court, but exercising this discretion requires consideration of whether "(1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Mohamad v. Rajoub*, 634 F.3d 604, 606 (D.C. Cir. 2011) (quoting *Keegel*, 627 F.2d at 373). "On a motion for relief from the entry of a default or a default judgment, all doubts are resolved in favor of the party seeking relief." *Jackson*, 636 F.2d at 836.

### A. *Defendant's Default Was Not Willful*

To determine whether to vacate entry of default, the Court must first ascertain whether the defendant's failure to respond in a timely manner was willful. Bad faith is not necessary to conclude that the defendant acted willfully. *Capital Yacht Club v. Vessel Aviva*, 228 F.R.D. 389,

393 (D.D.C. 2005). "The boundary of willfulness lies somewhere between . . . a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable." *Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 26 (D.D.C. 2003).

In this case, the defendant does not dispute that it failed to file a timely response on March 10, 2010, as required by the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(a)(1)(A)(i). In fact, both parties generally focus on the date of June 1, 2010 as the "due date" for the defendant's responsive pleading since this was the date set by their informal agreement as the deadline for the defendant's response. Pl.'s Mem. P. & A. Supp. Mot. For Entry of Default, ECF No. 7, at 2 ("Defendant's Answer was due on June 1, 2010"); Def.'s Mem. Supp. Mot. Vacate Entry of Default, ECF No. 11, at 5 ("Defendant believed it properly and timely complied with its obligations to submit a responsive pleading to the Court by June 1, 2010 . . ."). Absent an extension of time sanctioned by the Court for filing a response to the Complaint, however, the time limits set forth in the governing rules apply rather than the terms of an informal "agreement" between the parties.

Informal resolutions of disputes are certainly encouraged, but once a case is initiated with the Court, the parties have an independent obligation to comply with the Federal Rules of Civil Procedure and the local rules of the Court. The Federal Rules are intended to "secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. "Mere agreements of counsel or parties cannot alone be sufficient to waive the timeliness requirements of the Federal Rules," *Keegel*, 627 F.2d at 374-5, and the Court will not cede to litigants the Court's prerogative to control its docket. Default judgment is proper where a defendant "has failed to protect its own interests" and relied on the "mere existence of settlement

9

negotiations as an excuse for failing to fulfill its responsibilities to the Court." *Int'l Painters*, 288 F. Supp. 2d at 26.

Nevertheless, in assessing whether good cause exists to set aside the entry of default, an informal agreement between the parties is relevant to whether the defendant's failure to file a responsive pleading was willful. *See id.* (refusing to vacate default judgment where defendant ignored plaintiff's specific threat to file for a default if defendant failed to respond by informal deadline and defendant had no meritorious defense); *Flynn v. Pulaski Constr. Co.*, No. 02-cv-2336, 2006 WL 47304, at *8 (D.D.C. Jan. 6, 2006) ("default is willful when a defendant fails to meet an informal deadline after which plaintiffs specifically threatened to file for default." ). "Reliance upon representations made by opposing counsel may mitigate an intentional failure to respond if the court is convinced that such reliance was made in good faith." *Int'l Painters*, 288 F. Supp. 2d at 26 (citing *Keegel,* 627 F.2d at 374). In this case, in the weeks preceding the March 10, 2010 date by which the defendant was required to file a responsive pleading, the parties were engaged in settlement negotiations. As part of those negotiations, the plaintiff informed the defendant, who was then proceeding *pro se*, that the plaintiff would "ask the Court to delay any scheduled proceedings to allow the parties to explore settlement." Pl.'s Mot. & Mem. P. & A. for Continuance, ECF No. 6, at 2. While this representation by plaintiff does not relieve the defendant from its obligation to comply with applicable rules, the defendant may have reasonably assumed that the plaintiff would seek permission to delay *all* court proceedings, particularly where the parties had agreed upon a deadline of June 1, 2010 for the defendant to file an Answer. *See Lambert v. Bd. of Comm'rs of Orleans Levee Dist.*, No. 05-cv-5931, 2006 WL 1581262, at *2 (E.D. La. June 7, 2006) (stating that informal agreements regarding extensions are "without legal effect," but holding that the defendant's failure to answer was not willful, in

part, because of defendant's belief of the informal extension to answer); *DIRECTV, Inc. v. Meyers*, 214 F.R.D. 504, 511-12 (N.D. Iowa 2003) ("[T]he more prudent thing for [defendant's] counsel to do to ensure that [defendant] did not default was to seek an extension of the time to answer *from the court*. Nevertheless, it was not necessarily unreasonable for counsel to rely on what counsel believed was an informal agreement concerning the deadline." (emphasis in original)). Showing a willful disregard of court filing requirements would plainly be difficult to make in circumstances where, as here, a *pro se* defendant relied on opposing counsel's representation that court deadlines would be postponed.

The plaintiff does not address this point but instead argues that the Court should consider the defendant to have willfully defaulted because, having agreed to an informal deadline of June 1, 2010, the defendant nonetheless failed to file a proper pleading on that date. Although the defendant submitted a motion to dismiss on June 1, 2010, plaintiff contends that the defendant deliberately chose, while represented by counsel not admitted to this jurisdiction's Bar, to "flout [] well established precedent" by filing its motion *pro se* in order to avoid retaining counsel admitted in the District of Columbia. Pl.'s Opp'n Mot. Vacate Entry Default, ECF No 13, at 5. Thus, according to the plaintiff, this "is not a case of simple neglect." *Id.*

The Court agrees with plaintiff that the defendant should have been aware when it attempted to file a responsive pleading by the informal deadline agreed to by the parties that a corporation may not appear *pro se,* since it was then represented by its current counsel. It is a stretch, however, to conclude that the failure to file a proper responsive pleading was a deliberate decision to default in the face of the defendant's consistent refrain that it simply wished to avoid or minimize the cost of litigation and local counsel. *See* Pl.'s Mot. & Mem. P. & A. for Continuance, ECF No. 6, at 2 ("[Defendant] expressed an interest in settling this matter and

11

asked whether it could be resolved without the need for him to contact the Court or retain counsel."); Curry Aff. ¶ 5 (same); Def.'s Mem. Supp. Mot. Vacate Entry Default, ECF No. 11, at 1 ("After approximately three (4) [sic] months of attempted settlement discussions . . . Defendant retained Intellectual Property counsel to assist him in further settlement discussions.").

The plaintiff cites *Brand v. NCC Corp.*, 540 F. Supp. 562 (E.D. Pa. 1982), to support its contention that defendant's failure to respond was willful. That case, however, is distinguishable on two grounds. First, the defaulting party in *Brand* was seeking to vacate a default judgment, not merely the entry of default. *See id.* at 564. The standard to vacate default judgment is significantly greater than the "good cause" standard required to vacate a Clerk's entry of default. *Compare* FED. R. CIV. P. 55(c) *with* FED. R. CIV. P. 60(b); *see also Int'l Painters,* 288 F. Supp. 2d at 26 ("[T]he Rule 60(b) standard is a more rigorous one because 'the concepts of finality are more deeply implicated' in default judgment cases."). Second, the defendant in *Brand* both intentionally ignored the complaint entirely and refused to obtain counsel after the court stated that it was necessary. *See Brand*, 540 F. Supp. at 563-64. Here, the defendant attempted to file a timely responsive pleading and obtained counsel to rectify its procedural error shortly after the Court denied the defendant leave to file its motion.

The context surrounding entry of default in this case indicates that the defendant's default was not willful. The defendant participated in settlement negotiations with the plaintiff from February 2010 until at least early May 2010. It attempted to file a responsive pleading by the informal deadline agreed upon by the parties, and it moved to vacate the Clerk's entry of default and re-file a responsive pleading shortly after it became aware that its June 1, 2010 pleading would not be accepted. These facts do not suggest willful indifference to this litigation, but rather demonstrate defendant's active efforts to avoid entry of default and present its defense.

### B. Plaintiff Would Not Suffer Prejudice if Entry of Default is Vacated

The second factor the Court must consider when deciding whether to vacate entry of default is the potential prejudice to the plaintiff. "[D]elay in and of itself does not constitute prejudice." *Haskins*, 755 F. Supp. 2d at 130 (quoting *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 15 (1st Cir. 2003)). To evaluate prejudice, "a court should consider – not the mere fact of delay itself – but rather any effects such delay may have on the plaintiff (for example, loss of evidence or increased difficulties in obtaining discovery)." *Essroc Cement Corp. v. CTI/D.C., Inc.*, 263 F.R.D. 17, 21 (D.D.C. 2009); *see also Haskins*, 755 F. Supp. 2d at 130-31 ("The issue is not mere delay, but rather its accompanying dangers: loss of evidence, increased difficulties of discovery, or an enhanced opportunity for fraud or collusion," quoting *KPS & Assocs., Inc.*, 318 F.3d at 15).

To support its contention that it will suffer prejudice from vacatur of the Clerk's entry of default, the plaintiff states "it appears that evidence may have been destroyed in the months following the filing of the Complaint." Pl.'s Opp'n Def.'s Mot. Vacate Entry of Default, ECF No. 13, at 13. Specifically, the plaintiff asserts that the defendant "disabled its websites entirely" rather than "simply remove the infringing merchandise," and this "destruction of evidence related to Defendant's websites will likely compromise [plaintiff's] ability to litigate its claims." *Id.* Plaintiff supplies no additional information on how loss of this evidence will prevent it from prosecuting its case.

The defendant denies it destroyed evidence, referring to the plaintiff's allegations as "potentially libelous" and "grossly false." Def.'s Reply Br., ECF No. 16, at 4. The defendant further argues that even if disabling the defendant's website resulted in a loss of evidence, the plaintiff has not demonstrated any relationship between the purported destruction of evidence

13

and prejudice the plaintiff will suffer if default is vacated. *Id.* at 4.

Even if the disabling of the defendant's website resulted in the loss of evidence, the plaintiff has not sufficiently demonstrated prejudice in this case since both discovery sanctions and statutory damages remain available to compensate the plaintiff. First, if the defendant failed to fulfill its obligation to preserve evidence relevant to the claims and defenses in this lawsuit, the plaintiff may seek appropriate sanctions. *See, e.g., Talavera v. Shah*, 638 F.3d 303, 312-314 (D.C. Cir. 2011) (reversing summary judgment to defendant on claim for which defendant's employee destroyed evidence since plaintiff was entitled to more than just "weak adverse inference"); *Webb v. District of Columbia*, 146 F.3d 964, 976 (D.C. Cir. 1998)(defendant's failure to ensure that documents relevant to litigation were preserved was "certainly serious" but default judgment vacated for district court to consider appropriate sanctions); *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1475-78 (D.C. Cir. 1995) (discussing district court's power to impose sanctions for misconduct during discovery); *Mazloum v. D.C. Metrop. Police Dep't*, 530 F. Supp. 2d 282, 290 (D.D.C. 2008) (where "party having control over evidence had an obligation to preserve it at the time it was destroyed . . . [and] should have known that the evidence might be relevant to future litigation," adverse inference is appropriate) (internal quotes and citations omitted); *More v. Snow*, 480 F. Supp. 2d 257, 275 (D.D.C. 2007) ("a court may employ an adverse inference due to a party's 'failure to preserve evidence,' even if deliberate or reckless conduct is not present," quoting *Rice v. United States*, 917 F. Supp. 17, 19-20 (D.D.C. 1996)).

Second, if any loss of evidence occurred that adversely affects the plaintiff's access to information relating to the amount of actual damages incurred, the plaintiff may be entitled to statutory damages. Even without *any* evidence from the defendant's website establishing actual damages, the plaintiff may move, as it has done in its Motion for Default Judgment, for statutory

14

damages under the Lanham Act, 15 U.S.C. § 1117(c). The Lanham Act allows the trademark holder to recover statutory damages from $1,000 to $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed," regardless of willfulness, and up to $2,000,000 per counterfeit mark per type of goods if the infringement was willful. 15 U.S.C. § 1117(c). Indeed, the problem of infringer nondisclosure during discovery leaving trademark holders with uncertain damages motivated the enactment of the statutory damages provision. *Gucci Am., Inc. v. Duty Free Apparel, LTD.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) ("Congress added the statutory damages provision of the Lanham Act . . . because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . . , making proving actual damages in these cases extremely difficult if not impossible,'" quoting S. Rep. No. 104-177, at 20 (1995)); *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999).

In short, the record currently before the Court does not support the plaintiff's contention that it will be prejudiced from vacatur of the Clerk's entry of default.

C. *The Defendant Presents a Meritorious Defense*

Finally, the Court must consider whether the defendant has submitted a meritorious defense. When moving to vacate entry of default, the defendant is not required to prove a defense, but rather must only assert a meritorious defense that it may prove at trial. *See Int'l Painters,* 288 F. Supp. 2d at 28. "[A]llegations are meritorious if they contain even a hint of a suggestion which, proven at trial, would constitute a complete defense." *Mohamad*, 634 F.3d at 606 (quoting *Keegel*, 627 F.2d at 374).

In this case, in accordance with Local Rule 7(g), the defendant filed simultaneously with its motion to vacate the Clerk's entry of default, a motion to dismiss for lack of personal

jurisdiction, arguing that the defendant has no contacts or ties to the District of Columbia. If the defendant is correct and the Court lacks personal jurisdiction, the Court may not enter judgment against the defendant. In fact, even if the defendant had not appeared to contest entry of default judgment or moved to vacate the Clerk's entry of default, the Court would have an independent obligation to evaluate personal jurisdiction. Although questions of personal jurisdiction are waived if not raised by motion or responsive pleading, *see* FED. R. CIV. P. 12 (b), (h)(1), where a defendant is in default a court must "satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Mwani v. Bin Laden,* 417 F.3d 1, 6 (D.C. Cir. 2005); *Kline v. Williams*, No. 05-cv-1102, 2006 WL 758459, at *1 (D.D.C. Mar. 23, 2006) ("jurisdictional defects 'are not waived by default when a party fails to appear or to respond,'" quoting *Dennis Garber & Assocs., Inc., v. Pack-Tech Int'l Corp.,* 115 F.3d 767, 772 (10th Cir. 1997)).

The plaintiff characterizes the defendant's motion to dismiss for lack of personal jurisdiction as "lack[ing] merit." Pl.'s Opp'n Mot. Vacate Entry Default, ECF No. 13, at 13. Yet, in support of its motion, the defendant provides an affidavit from the defendant's owner, who states that he "cannot recall ever conducting a business transaction, including the mailing of catalogues, shipment of products or sourcing of material of Delta Sigma Theta Sorority, Inc. within Washington D.C." Def.'s Mot. Dismiss, ECF No. 12, Ex. A, Ajay Chopra Aff., ¶ 8. He further avers that "[u]pon review of accessible documents in [his] possession, [he] cannot find any indication that [the defendant] has ever conducted business in regards to Delta Sigma Theta Sorority, Inc. within Washington, D.C." *Id.* Moreover, the description of the defendant's website raises issues whether this website alone would support exercise of personal jurisdiction. Def.'s Mot. Dismiss, ECF No. 12, at 8; Def.'s Mot. Dismiss, ECF No. 12, Ex. A, Ajay Chopra

Aff., ¶¶ 6-8. These assertions provide "a hint of a suggestion" of a meritorious defense, sufficient to meet the defendant's burden to vacate entry of default. *See Keegel*, 627 F.2d at 374 (stating that the defendant's defense was "somewhat broad and conclusory" but "adequately [met] the meritorious defense criterion").

The defendant's motion to dismiss filed simultaneously with its motion to vacate entry of default supplies, if proven, a meritorious defense to the plaintiff's claims. Moreover, the defendant's default was not willful and the plaintiff will not suffer prejudice if the Clerk's entry of default is vacated. Accordingly, the defendant's motion to vacate entry of default is granted and, consequently, the plaintiff's motion for default judgment is denied.[5]

### III. DEFENDANT'S MOTION TO DISMISS

Concurrently with its motion to vacate entry of default, the defendant filed a motion to dismiss for lack of personal jurisdiction. In its opposition to this motion, the plaintiff states that "[i]n the event the Court grants Defendant's Motion to Vacate Entry of Default, [the plaintiff] respectfully requests leave to conduct limited jurisdictional discovery related to Defendant's contacts with the District of Columbia and reserves its right to more fully oppose Defendant's Motion to Dismiss." Pl.'s Opp'n Mot. Dismiss, ECF No. 14, at 1. Jurisdictional discovery is warranted in this case, and the Court therefore grants the plaintiff's request.

In cases where a party's contacts with the jurisdiction are unclear and the record before the court is "plainly inadequate," courts have allowed for a discovery period within which to

---

[5] Plaintiff requests that, if the defendant's motion to vacate entry of default is granted, the Court should order the defendant to pay the plaintiff's costs in moving for entry of default and default judgment. The Court denies the plaintiff's request. A court may "impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party." *Capital Yacht Club v. Vessel Aviva*, 228 F.R.D. 389, 395 (D.D.C. 2005) (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 515-16 (2d Cir. 2001)). Prior to moving for entry of default, the plaintiff was served with the defendant's procedurally defective motion to dismiss and was thus aware that the defendant had made efforts to respond to the Complaint in accord with the informal time agreement. When plaintiff moved for entry of default and for default judgment, it did so with clear notice that the defendant would likely appear to contest this action. Therefore, the Court concludes that re-allocation of litigation costs are not warranted.

gather evidence to support jurisdiction. *See GTE New Media Servs., Inc., v. BellSouth Corp.*, 199 F.3d 1343, 1351-52 (D.C. Cir. 2000) (reversing lower court's finding of personal jurisdiction, but stating that "[t]his court has previously held that if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."). "This Circuit's standard for permitting jurisdictional discovery is quite liberal," *Diamond Chem. Co. v. Atofina Chems., Inc.,* 268 F. Supp. 2d 1, 15 (D.D.C. 2003), and jurisdictional discovery is available when a party has "at least a good faith belief" that the court has personal jurisdiction. *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998).

Courts have permitted discovery even when a party has failed to establish a *prima facie* case of personal jurisdiction. *See GTE New Media Servs.*, 199 F.3d at 1351-52 (". . . as the record now stands, there is absolutely no merit to [plaintiff]'s bold claim that the parent companies and subsidiaries involved in this lawsuit should be treated identically. Jurisdictional discovery will help to sort out these matters."); s*ee also In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 35 (D.D.C. 2000) (discussing *GTE New Media Servs.* and stating that "the D.C. Circuit held that although plaintiffs had failed to establish a prima facie case of personal jurisdiction and the court was unable to tell whether jurisdictional discovery would assist GTE on this score, plaintiffs were entitled to pursue [discovery]."). Faced with the prospect of dismissal, a plaintiff "is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *Humane Soc'y of the United States v. Amazon.com, Inc.*, No. 07-cv-623, 2007 U.S. Dist. LEXIS 31810, at *10 (D.D.C. May 1, 2007) (internal quotation and citation omitted).

The defendant has provided a sworn affidavit from the defendant's owner, Ajay Chopra,

asserting that he "cannot recall" ever conducting business of any kind involving the plaintiff's Marks in this jurisdiction. Def.'s Mot. Dismiss, Ex. A, Ajay Chopra Aff., ¶ 8. The nature of the defendant's business operations, however, includes selling merchandise via websites and catalogues and may consequently reach customers outside the local area in New York, New York, where the defendant's business is physically located. Even if the defendant's owner has no present recollection of reaching customers in this jurisdiction, the plaintiff is entitled to test Mr. Chopra's memory through discovery.

The Court therefore grants the plaintiff sixty (60) days to conduct discovery regarding the defendant's ties to the District of Columbia. The defendant's motion to dismiss is denied, with leave for the defendant to re-file its motion to dismiss following completion of jurisdictional discovery. On or before the conclusion of the period of jurisdictional discovery, the parties shall submit to the Court an agreed-upon schedule for further briefing in the issues raised by the defendant's Motion to Dismiss and otherwise comply with paragraph 1 of the Standing Order.

## IV. CONCLUSION

For the foregoing reasons, the plaintiff's motion for default judgment is denied and the defendant's motion to vacate entry of default is granted. The Court further denies the defendant's motion to dismiss for lack of personal jurisdiction, and grants the plaintiff sixty (60) days to conduct jurisdictional discovery. An Order consistent with this Memorandum Opinion will be entered.

**DATED: June 21, 2011**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge